IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REBECCA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-568-WC |
| | ) | [wo] |
| MONTGOMERY COUNTY | ) | |
| COMMUNITY PUNISHMENT AND | ) | |
| CORRECTIONS AUTHORITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rebecca Johnson filed this action against Defendant Montgomery County Community Punishment and Corrections Authority ("MCCPCA"), Defendant Paul Brown ("Brown"), and former Defendant Montgomery County Commission ("MCC") on June 8, 2018, alleging liability under 42 U.S.C. § 1983 for race discrimination and for unlawful retaliation, each in violation of 42 U.S.C. § 1981. Defendants moved to dismiss Plaintiff's claims on July 18, 2018, and in response Plaintiff amended her complaint effective September 13, 2018, abandoning her claims to the extent alleged against the MCC and abandoning her claim of race discrimination in its entirety.

By and through her amended complaint, Plaintiff alleges that the MCCPCA is her employer and that Defendant Brown is her immediate supervisor. Plaintiff further alleges that in the course of her employment by the MCCPCA she has been subjected to unlawful race discrimination, and that she has opposed such unlawful discrimination by engaging in protected conduct. Plaintiff additionally alleges that in retaliation for her

protected opposition to race discrimination in the workplace, the MCCPCA and Defendant Brown subjected her to discipline and to other adverse employment actions. Arising out of the foregoing, through two separate claims Plaintiff alleges the liability of the MCCPCA and of Defendant Brown in his individual capacity under 42 U.S.C. § 1983 for unlawful retaliation in violation of 42 U.S.C. § 1981. Plaintiff seeks award of noneconomic money damages for emotional distress in unspecified amounts, of economic damages for lost wages plus prejudgment interest in unspecified amounts, and of her attorney fees and costs, as well as award of punitive damages against Defendant Brown only. This court has federal-question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331(a).

Now before the court is Defendants' *Motion to Dismiss* (Doc. 36) Plaintiff's Amended Complaint (Doc. 35) for failure to state a claim. The undersigned has considered the Defendants' motion and all of the pleadings on file. For the reasons that follow, the undersigned finds that the Defendants' motion is due to be granted in part as to a portion of Plaintiff's Section 1981 claim against the MCCPCA as set forth below, and otherwise denied.

## I.   LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Federal Civil Procedure Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative

level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004); see also Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In consequence, for a complaint to survive a motion to dismiss, the non-conclusory factual allegations and reasonable inferences therefrom must be at least plausibly suggestive of a claim entitling the plaintiff to relief. *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014); *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1310 (11th Cir. 2008).

In ruling on a Rule 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to or incorporated by reference into the complaint, and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however,

presume the truth of legal conclusions cast in the form of factual allegations. *See Tellabs*, 551 U.S. at 323.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Johnson is an African American woman and a resident of Montgomery County, Alabama.   Defendant MCCPCA is a public corporation of the State of Alabama and has at all material times been Plaintiff Johnson's employer.   Defendant Brown has at all material times served as the MCCPCA's Executive Director and Appointing Authority, and as Plaintiff Johnson's immediate supervisor in that capacity.

### B.     Material Allegations of Plaintiff's Amended Complaint[1]

Plaintiff has been employed by the MCCPCA in an unspecified capacity since May 6, 2003. *See* Doc. 35, ¶¶ 7, 31.   At all material times, Defendant Brown was Plaintiff's immediate supervisor. *See id.*, ¶¶ 9, 33.   During the course of Plaintiff's employment by the MCCPCA, Defendant Brown subjected Plaintiff to racially discriminatory conduct, including, among other unspecified acts, placing a banana and a toy monkey in her office in 2011 and refusing to allow her to be certified with or to use her duty weapon in June 2016. *See id.*, ¶¶ 10, 34.   In response and opposition to such conduct, Plaintiff filed charges of race discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2011 and again in June 2017. *See id.*, ¶¶ 11, 35. Defendant Brown was aware of both EEOC filings. *See id.*, ¶¶ 12, 36.   The EEOC issued

---

[1] Except where otherwise indicated, the following recitation constitutes the undersigned's construal of the allegations of Plaintiff Johnson's Amended Complaint (Doc. 35), of any matters incorporated by reference

a Notice of Right to Sue in connection with Plaintiff's June 2017 filing on August 6, 2017. *See id.*, ¶¶ 13, 37.

On September 22, 2017, Defendant Brown issued Plaintiff a written reprimand regarding an incident, unidentified in Plaintiff's Amended Complaint, that had occurred more than a year previously. *See id.*, ¶¶ 14, 38. Plaintiff responded by advising Defendant Brown that she believed the reprimand both to be pretextual and to constitute unlawful retaliation in response to her EEOC filings, and that she would continue filing further such charges until the discriminatory and retaliatory conduct ended. *See id.*, ¶¶ 15, 39. On November 7, 2017, Defendant Brown placed Plaintiff on administrative leave and recommended the termination of her employment, specifically citing as grounds for such disciplinary action Plaintiff's conduct in filing EEOC charges and in indicating her intention to file further such charges in the future. *See id.*, ¶¶ 16–17, 40–41.

Although Plaintiff's Amended Complaint is silent as to this point, it appears that Plaintiff administratively challenged the imposed and recommended discipline of November 2017. On January 4, 2018, an Administrative Law Judge determined that the discipline should be rescinded. *See id.* ¶¶ 18, 42. Notwithstanding the foregoing, on January 10, 2018, Defendant Brown suspended Plaintiff's employment without pay for a 28-day period, again expressly citing as grounds for such disciplinary action Plaintiff's conduct in filing EEOC charges and in indicating her intention to file further such charges. *See id.*, ¶¶ 19, 22, 43, 46. Defendant Brown's decision to suspend Plaintiff's employment was not subject to administrative review, *see id.*, ¶¶ 21, 45, and it is

therein, and of any matters properly subject to judicial notice in the light most favorable to Plaintiff.

Plaintiff's position that, as MCCPCA's Executive Director and Appointing Authority, Defendant Brown was a final policymaker for the MCCPCA, *see id.*, ¶¶ 25, 49.

As noted, arising out of the foregoing, Plaintiff alleges the liability of the MCCPCA and of Defendant Brown in his individual capacity under Section 1983 for unlawful retaliation in violation of Section 1981, in two separate claims.

## III. ANALYSIS

Each of Plaintiff's two claims for relief are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a mechanism whereby civil rights plaintiffs may bring actions to redress violations of federally protected rights. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 172 (1961). Each of Plaintiff's two claims for relief is premised on the theory that the Defendants' conduct violated her right under 42 U.S.C. § 1981 to freedom from adverse employment actions in retaliation for engaging in statutorily protected conduct.

It is well established that Section 1981 prohibits employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited racial discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008). To state a Section 1981 retaliation claim, a plaintiff must allege: (1) that she engaged in statutorily protected activity, (2) that she suffered a materially adverse action, and (3) that there was a causal connection between the protected activity and the adverse action. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).

Defendants argue that Plaintiff's Section 1981 retaliation claims against both Defendants fail because Plaintiff has failed adequately to allege that she engaged in statutorily protected conduct, because some of Defendants' complained-of conduct was

not adverse for Section 1981 purposes, and because Plaintiff has failed adequately to allege a causal connection between her purportedly protected conduct and the adverse employment actions that were imposed against her. Defendants further argue, in the alternative to the foregoing, that Defendant Brown enjoys qualified immunity from suit in connection with Plaintiff's Section 1981 claim against him. Defendants also argue, in addition to the foregoing, that Plaintiff's Section 1981 claim against the MCCPCA fails because Plaintiff has failed adequately to allege that Defendants' complained-of conduct was caused by a policy or custom of the MCCPCA. The undersigned addresses each of these arguments in turn, below.

A. **The Adequacy of Plaintiff's Allegations to State the Elements of a Claim for Violation of Section 1981**

i. Plaintiff's Allegations of Engagement in Statutorily Protected Conduct

For opposition to unlawful conduct to be statutorily protected for purposes of Section 1981, the plaintiff must have had a reasonable, good faith belief that the opposed conduct was unlawful. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). In consequence, to satisfy the "statutorily protected conduct" element of a Section 1981 retaliation claim at the pleading stage of a lawsuit, a plaintiff must allege facts sufficient to support the conclusion that the plaintiff subjectively (that is, in good faith) believed that her employer was engaged in unlawful employment practices, and must additionally allege facts sufficient to support the conclusion that the employee's belief was objectively reasonable. *See Little v. United Techs., Carrier Transicold Div.*,

103 F.3d 956, 960 (11th Cir. 1997).[2]   The objective reasonableness of an employee's belief is determined by the metric of existing substantive law at the time the opposition occurred. *See Clover*, 176 F.3d at 1351.   Here, the defendants do not challenge the adequacy of Plaintiff's allegations of subjective belief that she was opposing unlawful employment practices, but rather challenge only the adequacy of her allegations to support the conclusion that her belief was objectively reasonable under the circumstances.

As noted, Plaintiff alleges that she engaged in protected conduct by filing charges of race discrimination with the EEOC in 2011 and again in June 2017, *see* Doc. 35, ¶¶ 11, 35, and by advising Defendant Brown that she believed the written reprimand of September 22, 2017, to be pretextual and to constitute unlawful retaliation in response to her EEOC filings, and that she would continue filing further such charges until the discriminatory and retaliatory conduct ended, *see id.*, ¶¶ 15, 39.   As to the EEOC filings, Defendants concede that, as a general rule, it is statutorily protected conduct to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-3(a).   Defendants argue that here, however, Plaintiff's EEOC charges were nevertheless unprotected for Section 1981 purposes because Plaintiff has failed to identify the allegedly discriminatory practices that she challenged through her EEOC filings, with the result that it cannot be determined from the allegations whether Plaintiff had an objectively reasonable basis for believing

---

[2] The cited portion of *Little* addressed claims arising under Title VII rather than Section 1981.   However, the Eleventh Circuit has consistently held that the elements of Section 1981 and Title VII retaliation claims are identical and that the same analytical frameworks govern both. *See, e.g.*, *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

that those practices were unlawful. The undersigned disagrees. As noted, Plaintiff alleges that (among other unspecified acts) Defendant Brown placed a banana and a toy monkey in her office in 2011, that he refused to allow her to be certified with or to use her duty weapon in June 2016, *see* Doc. 35, ¶¶ 10, 34, and that in opposition to those practices she filed EEOC charges in 2011 and in June 2017, *see id.*, ¶¶ 11, 35. It is a fair inference from Plaintiff's allegations (and their juxtaposition in the Amended Complaint) that the 2011 EEOC charge arose out of the placement of the banana and the toy monkey in Plaintiff's office and that the 2017 EEOC charge arose out of the refusal to allow Plaintiff to be certified with or to use her duty weapon.

As to the placement of the banana and the toy monkey in Plaintiff's office, the Eleventh Circuit has acknowledged that, in light of the observable prevalence of racially motivated slurs comparing African-Americans to monkeys, it can be a reasonable conclusion that references to monkeys and bananas in connection with African-American employees are intended as racially motivated insults and that such references can be actionable as racial harassment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297–98 (11th Cir. 2012). As such, there is at least a question of fact as to whether Plaintiff had an objectively reasonable basis for believing that her 2011 EEOC charge was in opposition to unlawful conduct. As to the 2017 EEOC charge, Plaintiff expressly alleges that the EEOC issued a Notice of Right to Sue in connection with that charge. *See* Doc. 35, ¶¶ 13, 37. It is a fair inference from that allegation that Plaintiff's belief that the conduct challenged by and through that filing was likewise objectively reasonable.

As to the reprimand of September 22, 2017, which issued approximately five weeks after Plaintiff received a Notice of Right to Sue from the EEOC, *see id.*, ¶¶ 13–14, 37–38, Plaintiff alleges that it issued in connection with an incident that had occurred more than a year previously, *see id.*, ¶¶ 14, 38. It is a fair inference from the short time elapsing between issuance of the Notice of Right to Sue and issuance of the reprimand -- particularly when juxtaposed against the long period of time elapsing between the incident ostensibly motivating the reprimand and the reprimand's issuance -- that the reprimand was pretextual and motivated by retaliatory animus in response to Plaintiff's success in obtaining an EEOC Notice of Right to Sue. *See*, *e.g.*, *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (characterizing a period of approximately one month between protected activity and an adverse employment action as a "short time" affirmatively supporting the conclusion that the adverse action was motivated by the protected activity). At this pleading stage of these proceedings, this is sufficient to support the conclusion that Plaintiff was objectively reasonable in her belief that she was acting to oppose unlawful conduct when she stated that she would continue to file EEOC charges until the unlawful conduct ceased.

In the alternative to the foregoing, Defendants argue that the manner of Plaintiff's response to Defendant Brown's September 22, 2017, reprimand was so unreasonable as to strip it of all statutory protection. The Eleventh Circuit has held that, to qualify for statutory protection, "the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable." *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 401 (11th Cir. 1989). The determination of

reasonableness in this context is made on a case by case basis and requires a balancing of the rights of employees against an employer's need for a productive work environment. *See id.* Here, however, the allegations of Plaintiff's Amended Complaint do not compel the conclusion that Plaintiff's response to the reprimand was so disruptive as to be unreasonable in light of the MCCPCA's legitimate need to maintain a productive work environment. To the contrary, the fair inference from Plaintiff's allegations is that she advised her supervisor that further unlawful retaliation would be met with appropriate, statutorily protected conduct in response, namely further EEOC charges.

In reply, Defendants invite the court to consider documentary evidence bearing on the manner of Plaintiff's response to the reprimand, namely the Notice of Suspension of January 10, 2018. *See* Doc. 40, Exh. 10 ("Notice of Suspension"). The Notice of Suspension is referenced and quoted in the Amended Complaint, *see* Doc. 35, ¶¶ 22, 46, and Plaintiff's claims arise at least in part out of the Notice of Suspension, in that it effected the complained-of retaliatory suspension of Plaintiff's employment without pay. As such, this court can properly consider the Notice of Suspension without converting the Motion to Dismiss to a motion for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Notice of Suspension, which is signed by Defendant Brown, indicates that, in response to receiving the reprimand, Plaintiff "proceeded to issue a number of threats, accusations, and intimidating remarks [. . .]," specifically accusations of harassment in the workplace, accusations that the reprimand was pretextual and retaliatory, threats to sue if the unlawful conduct did not cease, "intimidating" statements that Plaintiff was aware of witnesses who could testify to Defendant Brown's unlawful

conduct, statements that members of the MCCPCA board would "incur repercussions" if they ratified the reprimand, and "an intimidating threat" that, as a result of the reprimand, either Plaintiff or Defendant Brown would end up leaving the MCCPCA. Doc. 40, Exh. 10 at 2. The Notice of Suspension is thus consistent with the allegations of the Amended Complaint, except that Plaintiff's statements are variously characterized therein as "threats" or as "intimidating." *Id.* However, a finder of fact could reasonably conclude, upon consideration of the allegations of the Amended Complaint and of the contents of the Notice of Suspension, that the characterization of Plaintiff's statements as "threats" or as "intimidating" was self-serving and, on that basis, could elect to credit Plaintiff's allegations over Defendant Brown's characterization.

There is nothing unreasonable about expressing opposition to unlawful discrimination or retaliation, and a finder of fact could reasonably conclude based on the record that Plaintiff neither responded disproportionately to the alleged retaliation nor indicated that any disproportionate or unwarranted response would be forthcoming. The manner of Plaintiff's response to the reprimand therefore does nothing to disturb the conclusion that her response was statutorily protected.

For the foregoing reasons, the undersigned finds that the allegations of the Amended Complaint are adequate to satisfy the "statutorily protected conduct" element of Plaintiff's Section 1981 retaliation claims.

ii.     Plaintiff's Allegations of Materially Adverse Employment Action

An employment action is adverse for purposes of a Section 1981 retaliation action if it could potentially dissuade a reasonable employee from making a charge of

discrimination. *See Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Except in the case of the most trivial or petty actions against an employee, it is generally for a jury to decide whether an adverse action has the potential to dissuade a reasonable employee. *See id.* at 973, n.13. Here, the Defendants argue that, as a matter of law, Plaintiff's allegations regarding Defendant Brown's reprimand of September 22, 2017, are inadequate to support the conclusion that the reprimand was a materially adverse employment action.

Nothing in the Amended Complaint suggests that the question whether receipt of a formal, written reprimand might dissuade a reasonable employee from filing a discrimination charge should be taken from the jury. Because there is an unresolved question of fact as to whether the reprimand could constitute a materially adverse employment action for purposes of Plaintiff's Section 1981 reprimand claims, the undersigned finds that the allegations of the Amended Complaint are adequate to satisfy the "materially adverse employment action" element of Plaintiff's Section 1981 retaliation claims.

### iii. Plaintiff's Allegations of Causation

The courts within the Eleventh Circuit interpret the causation element of a Section 1981 retaliation claim broadly: to plead causation, a plaintiff need only allege facts sufficient to support the conclusion that the protected activity and the adverse employment action "are not completely unrelated." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). Moreover, a plaintiff can satisfy the causation requirement merely by adequately alleging that the person responsible for deciding to

impose the adverse action was aware of the protected conduct at the time the decision was made. *See Clover,* 176 F.3d at 1354; *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.,* 256 F.3d 1095, 1119 (11th Cir. 2001).   Such awareness can be established either directly or circumstantially, including through allegation of temporal proximity. *See Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 934 (11th Cir. 1995).

Here, Defendants argue that Plaintiff has failed to adequately allege a causal connection between either of her two EEOC filings and any materially adverse employment action, but they do not challenge the adequacy of her allegations to support a finding of causation in connection with the September 22, 2017, reprimand.   While the undersigned notes that no alleged adverse employment action was imposed on Plaintiff for a period of years following the 2011 EEOC filing, Plaintiff affirmatively alleges that Defendant Brown expressly identified both the 2011 and the 2017 EEOC filings as grounds for his decisions to place Plaintiff on administrative leave and to recommend the termination of her employment in November of 2017 and for his decision to suspend her employment without pay in January 2018. *See* Doc. 35, ¶¶ 17, 19, 22, 41, 43, 46. Despite the long lapse of time between the 2011 EEOC filing and the alleged adverse employment actions, a finder of fact could reasonably conclude on the basis of Plaintiff's allegations that the adverse employment actions of November 2017 and January 2018 were taken in retaliation for both EEOC filings, including the 2011 filing.   In consequence, the undersigned finds that the allegations of the Amended Complaint are adequate to satisfy the "causation" element of Plaintiff's Section 1981 retaliation claims.

## B.  Qualified Immunity

Qualified immunity offers complete protection from suits seeking civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks and citations omitted). Because the doctrine affords immunity from suit and not merely from liability for damages, the Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (internal quotation marks and citations omitted).

To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  If the defendant meets that burden, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *See Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).  To satisfy that burden, a plaintiff must show two things: (1) that a defendant violated the plaintiff's protected right and (2) that the violated right was "clearly established" at the time the violation occurred. *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  Here, for reasons discussed above, Plaintiff has adequately alleged that Defendant Brown

violated her protected right under Section 1981 to freedom from retaliation for opposing race discrimination in the workplace.

It is a fair inference from Plaintiff's allegations that Defendant Brown was acting within the course and scope of his discretionary authority when he imposed disciplinary measures against Plaintiff. It is therefore Plaintiff's burden to have alleged facts which, when read in the light most favorable to her, support the conclusion that Defendant Brown is not entitled to qualified immunity. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). In meeting this burden, Plaintiff is subject to a "heightened pleading standard" requiring her to state the facts supporting that conclusion with specificity. *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).

It is Plaintiff's theory that her Section 1981 rights were violated when Defendant Brown imposed adverse employment actions — specifically, the written reprimand of September 22, 2017, her placement on administrative leave in November of 2017, the recommendation in November of 2017 that her employment be terminated, and her suspension without pay for a period of 28 days in January of 2018 — in retaliation for her conduct in filing EEOC charges and in stating that she would continue to do so until the discriminatory and retaliatory actions ceased. The courts of the Eleventh Circuit have routinely recognized that it has been well established, since at least 1998, that employees have the right to be free from adverse employment actions imposed in retaliation for filing EEOC charges of race discrimination in the workplace. *See Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1413 (11th Cir. 1998) (establishing that Section 1981 prohibits retaliation for filing EEOC charges of race discrimination in the workplace); *see*

*also*, *e.g.*, *Tucker v. Talladega City Schs.*, 171 Fed. App'x 289, 295 (11th Cir. 2006) ("*Andrews* does establish that § 1981 encompasses a cause of action for retaliation") (unpublished disposition); *Marshall v. Daleville City Bd. of Educ.*, 2006 WL 2056581, * 11 (M.D. Ala. July 24, 2006) (an objectively reasonable public official would have known on the basis of *Andrews* by not later than 1998 that it was unlawful to retaliate against an employee for exercising her right to file an EEOC charge of discrimination). Here, Plaintiff has alleged with specificity that Defendant Brown expressly identified the grounds underlying the disciplinary actions of November 2017 and January 2018 as Plaintiff's EEOC filings and her threat to continue filing EEOC charges until the unlawful workplace behavior ceased. *See* Doc. 35, ¶¶ 16–17, 19, 22, 40–41, 43, 46. It is a fair inference from the allegations of the Amended Complaint, interpreted in the light most favorable to Plaintiff, that the reprimand of September 22, 2017, if pretextual as alleged, was motivated by the same retaliatory animus as the other disciplinary actions Defendant Brown imposed. At this pleading stage of these proceedings, these allegations are sufficient to meet Plaintiff's burden to establish that the rights violated by Defendant Brown's conduct were clearly established at the time they occurred. It follows that Defendants' Motion to Dismiss (Doc. 36) is due to be denied to the extent premised on a theory of qualified immunity.

### C.    Policy or Custom

As noted, Section 1983 prohibits a person acting under color of law from violating another's rights guaranteed under the United States Constitution. The definition of "person" under Section 1983 includes local government entities, including entities such

as the MCCPCA. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, local government entities may be liable under Section 1983 "only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Because there can be no vicarious liability under Section 1983, a local government entity may be liable only if a deprivation of federally protected rights results from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. Sch. Bd. of Volusia Cty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citing *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997); *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir. 1994)). Here, it is Plaintiff's position that the MCCPCA's complained-of conduct was effected through the actions of Defendant Brown, the MCCPCA's Executive Director and Appointing Authority, whom Plaintiff alleges to have enjoyed final policymaking authority for the MCCPCA.

In order for the actions of a government official to be deemed representative of the local government entity, the acting official must be imbued with final policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The courts within the Eleventh Circuit have consistently held that an official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997), *citing Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991). Here, Defendants argue on the basis of proffered evidence that Defendant Brown could not have had final policymaking authority on behalf of the

18

MCCPCA because his decisions regarding imposition of employee discipline were subject to administrative review.

At this pleading stage of these proceedings, this court declines to consider Defendants' evidentiary proffer, the subject of which is not referenced in the Amended Complaint and does not give rise to Plaintiff's claims in whole or in part. *See Day*, 400 F.3d at 1276. Turning then to analysis of the allegations of the Amended Complaint, the undersigned preliminarily notes Plaintiff's conclusory allegation that Defendant Brown was "responsible for making final policy for MCCPCA in connection with the area of conduct in question -- issuing the subject reprimand, placing the Plaintiff on administrative leave, recommending her termination and imposing the subject 28 day unpaid suspension." Doc 35, ¶¶ 25, 49. Because that allegation is conclusory, the court is not constrained to presume its truth for purposes of resolving Defendants' motion.

In addition, it is a fair inference from the allegation that an Administrative Law Judge determined that the disciplinary measures of November 2017 (Plaintiff's placement on administrative leave and the recommendation that her employment be terminated) should be rescinded, *see id.*, ¶¶ 18, 42, that Defendant Brown's decision to implement those measures was in fact subject to meaningful administrative review. By contrast, however, Plaintiff expressly alleges that Defendant Brown's January 10, 2018, decision to impose a 28-day suspension without pay was not subject to any form of administrative review, *see id.*, ¶¶ 21, 45, and that allegation is entitled to the presumption of truth. The Amended Complaint contains no allegations permitting any inference as to whether

Defendant Brown's September 22, 2017, issuance of a written reprimand was subject to administrative review.

On the basis of the foregoing, at this pleading stage of these proceedings and for the sole purpose of resolving the motion to dismiss now before the court, the undersigned finds that Defendant Brown was a final policymaker for the MCCPCA for purposes of the September 22, 2017, reprimand and the January 10, 2018, suspension. However, due to the Administrative Law Judge's review of the November 2017 disciplinary measures, the court finds that Defendants' Motion to Dismiss as to Plaintiff's Section 1981 retaliation claim against the MCCPCA – to the extent that claim is premised on the disciplinary measures of November of 2017 only – is granted because the disciplinary measure was subject to meaningful administrative review. Otherwise, the motion is denied to the extent premised on the purported inadequacy of Plaintiff's allegations to support a theory of the MCCPCA's *Monell* liability and all other disciplinary measures as alleged.

## IV.    CONCLUSION

For the reasons set forth above, and for good cause, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 36) is GRANTED in part and DENIED in part. To the extent that Plaintiff's Section 1981 retaliation claim against the MCCPCA is premised on the alleged disciplinary measures of November of 2017 only, the motion is GRANTED. Otherwise, the motion is DENIED in all other respects.

DONE this the 31st day of July, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE